Filed 4/20/26  P. v. Goodner CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN GOODNER,<br><br>    Defendant and Appellant. | A171924<br><br>(San Francisco City and County Super. Ct. No. CRI-23015442) |

A jury convicted defendant Steven Goodner of two counts of felony vandalism and two counts of misdemeanor malicious mischief but acquitted him of two counts of burglary after he twice caused damage to the same victim's car.  He was sentenced to time served and placed on probation.

On appeal, Goodner challenges only his vandalism convictions under Penal Code section 594, subdivision (b)(1), which required proof that "the amount of defacement, damage, or destruction" was at least $400 (damage-value element).  The parties agree that the trial court erred under state law by admitting the victim's hearsay testimony about the costs to repair her vehicle.  But Goodner contends, while the Attorney General denies, that the error was prejudicial and that retrial of the damage-value element is barred because there was no substantial evidence to support it.  We agree that the admission of the hearsay testimony was prejudicial under state law, but we

reject Goodner's substantial-evidence claim.[1]  Thus, we reverse the vandalism convictions and remand for the People to elect whether to retry them as felonies or accept their reduction to misdemeanors.  (See *People v. Jackson* (2018) 26 Cal.App.5th 371, 373.)

I.
FACTUAL AND PROCEDURAL
BACKGROUND

A.    *The 2022 Incident*

C.E., her husband, and their two young children lived near the Broadway tunnel in San Francisco.  On the morning of October 13, 2022, C.E. and the children left the house so she could drive them to school.  C.E.'s car, a Toyota Corolla, was parked on the street near the house.  As she approached her car, which she left locked the night before, she saw a man she later identified as Goodner in the driver's seat.  He was "rummaging through" the Toyota's interior.  C.E. told Goodner to get out of her car, at which point he did so and began "slowly walking" away on the sidewalk.[2]

After Goodner left, C.E. observed that the Toyota's interior was "very dishevel[]ed."  There was "a very large poop" in the space between the driver's seat and the doorjamb, and the driver's seat was reclined back and "wet with liquid."  The cup holders had liquid in them, the steering wheel and center

---

[1] As a result, we need not address Goodner's claim that the evidence's admission also violated his rights under the federal confrontation clause, which would set a lower bar for finding prejudice.  (See *People v. Navarro* (2021) 12 Cal.5th 285, 310.)

[2] C.E. took photographs of Goodner as he walked away from her.  She also photographed him about two months later, when she happened to encounter him in downtown San Francisco.  We do not discuss the evidence of Goodner's identity in detail, as it is uncontested for purposes of this appeal that he was the person who damaged the interior of the Toyota during both charged incidents.

console had "burn marks" on them, and "the seat belt receptacle for the driver's [seat] was completely melted to where [it] didn't work." The car was full of trash and other items that did not belong to C.E.'s family, including an insulated lunch bag and shoes. Photographs of the Toyota's interior that C.E. took later that morning, after she cleaned out the excrement, were admitted into evidence.

C.E. testified that there was no damage to the Toyota's interior before the 2022 incident. She took her car to a repair shop, where she did not ask to "fix anything that was not caused by [Goodner] in [her] vehicle." She testified that she paid a $100 deductible to her insurance company and, over a hearsay objection, that "[t]he amount of the final bill" to repair the Toyota "was roughly $2,100." No repair bill was introduced into evidence. On cross-examination, after refreshing her recollection with a copy of the repair estimate that also was not introduced into evidence, C.E. agreed the repairs included damage to the Toyota's front door that was "likely" caused in an attempt to enter the car.

### B. The 2023 Incident

Several months later, on the morning of September 23, 2023, C.E.'s nine-year-old daughter was at home watching cartoons when she "heard a car door slam." She looked outside and saw a man "getting out of the driver's seat" of C.E.'s Toyota. The car's door had been opened into her father's car, a Mazda CX-5, which was parked next to the Toyota. The daughter, who testified at trial, could not identify the man she saw in the Toyota, although she remembered details about his hair and clothing consistent with other evidence about Goodner's appearance during the incident.

The daughter found C.E. and told her that someone was in the Toyota. C.E. went to the front door to look outside but did not see anyone. She and

3

her husband got in the Mazda and began driving around to look for the suspect. C.E. soon spotted Goodner, whom she recognized from their previous contact, walking down the sidewalk. She then called 911. Goodner was ultimately arrested the following day, after being reported for trespassing at another residence in the same area.

C.E. testified that the Toyota, which she left locked the night before, "was full of trash. There were beer cans, energy drink cans, cigarette packets, powder." Similar to the car's condition after the 2022 incident, the driver's seat was reclined, the cup holders were full of liquid, and there was excrement between the driver's seat and door. There were also burn marks on the interior of the driver's door and the steering wheel.

A police officer who responded to C.E.'s 911 call that morning determined that the Toyota's "doorjamb [was] bent in, which more than likely helped pry the door open" and thus created the point of entry. There was a metal rod that C.E. did not recognize on the car's floorboard, but the officer determined that the rod was not used to pry open the car's door because it did not fit the doorjamb. A "pretty mangled" lighter was also inside the car, and the wrong key was in the car's ignition. The police took photographs of the Toyota's condition that were admitted into evidence.

C.E. took the Toyota, which she testified was not damaged beforehand, to a repair shop. She testified that she again paid a $100 deductible and, over another hearsay objection, that "[t]he final bill was around $8,[2]00," meaning her insurance company paid $8,100.[3] Again, the bill was not introduced into evidence.

---

[3] C.E. also testified about the cost to repair the purported damage to the Mazda, but we do not discuss this testimony in detail because the jury was unable to return a verdict on the vandalism count associated with that vehicle.

C.     *Procedural History*

Goodner was charged with three felony counts of vandalism causing $400 or more of damage, two felony counts of second degree burglary of a vehicle, and two misdemeanor counts of malicious mischief to a vehicle.  It was also alleged as an aggravating circumstance that the felonies involved an attempted or actual taking or damage of great monetary value.[4]

For the 2022 incident, the jury convicted Goodner of vandalism and malicious mischief as charged and acquitted him of burglary.  It found not true the great-value aggravating circumstance as to the vandalism.  For the 2023 incident, the jury also convicted Goodner of vandalism and malicious mischief of the Toyota as charged, acquitted him of burglary of that vehicle, and found not true the great-value aggravating circumstance as to the vandalism.  The jury was unable to return a verdict for the vandalism of the Mazda, and the trial court declared a mistrial on that count.

After the verdicts, Goodner moved to reduce the two vandalism convictions to misdemeanors on the basis that the prosecution failed to establish the Toyota sustained at least $400 of damage on each occasion.  He argued that C.E.'s testimony about the cost of repairing the vehicle was inadmissible because it was based on the repair bills, which were hearsay under established case law.  He pointed out that even though Evidence Code[5] section 813, the provision on which the trial court relied, permits an owner to

--------

[4] The charges were brought under Penal Code sections 594, subdivision (b)(1) (vandalism), and 459 (burglary), and Vehicle Code section 10853.  The aggravating circumstance was alleged under California Rules of Court, rule 4.421(a)(9).

[5] All further statutory references are to the Evidence Code unless otherwise noted.

opine about the value of property, it does not authorize admission of an opinion about repair costs based on bills that were not themselves admitted.

At the September 2024 sentencing hearing, the trial court denied Goodner's motion to reduce the vandalism convictions to misdemeanors. Although the court agreed with the defense that it had erred by overruling the hearsay objections to C.E.'s testimony, it concluded that the error was harmless because "substantial [other] evidence, if not ample evidence," supported the jury's determination that there was at least $400 of damage to the Toyota during each incident. This other evidence included C.E.'s testimony describing the damage and photographs of the car's interior.

The trial court then suspended imposition of the sentence for the vandalism convictions and placed Goodner on two years of probation. He was sentenced to 180 days total in jail for the malicious-mischief convictions, a term that was deemed served.[6]

## II.
### DISCUSSION

*A.      The Admission of C.E.'s Hearsay Testimony Was Prejudicial.*

The Attorney General concedes that C.E.'s testimony about the amount of the repair bills was erroneously admitted, as the trial court found at the sentencing hearing. But the parties disagree about whether the evidence's admission was harmless. We conclude that the error was prejudicial under state law and the felony vandalism convictions therefore cannot stand.

Hearsay is "a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter

---

[6] Goodner was later ordered to pay over $13,000 in direct restitution to C.E. We dismissed his appeal from the restitution order under *People v. Delgadillo* (2022) 14 Cal.5th 216 after his appellate counsel filed a no-issues brief. (*People v. Goodner* (Jan. 13, 2026, A173940) [nonpub. opn.].)

6

stated." (§ 1200, subd. (a).) Hearsay evidence is inadmissible except as provided by law. (§ 1200, subd. (b).) Under section 813, the provision on which the trial court relied to admit C.E.'s testimony about the Toyota's repair costs, the owner of property may give an opinion about the property's value. (§ 813, subd. (a)(2).) The parties agree that the challenged testimony was inadmissible under either this provision or any exception to the hearsay rule and that state-law errors are reviewed for harmlessness under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1308.) Under *Watson*, reversal is required if there is "a reasonable probability [Goodner] would have achieved a more favorable result absent the out-of-court statement[s]." (*People v. Lozano* (2024) 101 Cal.App.5th 366, 381–382.)

We conclude that the evidentiary error was prejudicial under this standard. The only testimony about the costs to repair the Toyota that was based on C.E.'s personal knowledge, as opposed to her review of the repair bills, was her testimony that she paid $100 as an insurance deductible on both occasions. The other primary evidence from which the jury might have inferred that the total damage each time was at least $400 was the testimony about and photographs of the Toyota's condition. But since Goodner was acquitted of both burglary charges, suggesting the jury was unconvinced he broke into the Toyota, the damage to the car's exterior was not necessarily attributable to him. As for the car's interior, we cannot say that the cleaning and repair costs were obviously at least $400 on both occasions. In the absence of concrete evidence about the cost of repairs, it is reasonably

7

probable that at least one juror would have remained unconvinced beyond a reasonable doubt of the damage-value element of felony vandalism.

The parties disagree about whether other aspects of the record also suggest that the evidentiary error was prejudicial. For example, after the jury originally returned their verdicts, polling of the jurors resulted in one of them expressing that the guilty verdicts on both Toyota felony vandalism counts were not that juror's true verdicts. The jury then deliberated further and returned guilty verdicts on those counts. We need not decide whether this suggests the hearsay evidence tipped the balance in a "close[]" case, as Goodner argues, or is insignificant because it fails to suggest that any juror "harbored doubt as to the value of the damage" in particular, as the Attorney General argues. Reversal is required since (1) the admissible evidence of the damage to the Toyota did not clearly establish that it cost at least $400 to fix each time and (2) there is nothing else in the record foreclosing the reasonable probability that at least one juror would have a reasonable doubt about the damage-value element.

### B. *Substantial Evidence Supported the Damage-value Element of Both Felony Vandalism Counts.*

Goodner also claims that the felony vandalism convictions cannot stand because, excluding C.E.'s erroneously admitted testimony, there was no substantial evidence that the damage to the Toyota was at least $400 each time. We are not persuaded.

As we already held that the vandalism convictions must be reduced to misdemeanors because of the error in admitting C.E.'s hearsay testimony, the only further relief Goodner could obtain from prevailing on his substantial-evidence claim is a bar to retrying him on the damage-value element. (See *People v. Eroshevich* (2014) 60 Cal.4th 583, 591.) To resolve this claim, we consider whether the record contains " 'substantial evidence to support the

8

verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

We agree with the Attorney General that Goodner misapprehends the nature of substantial-evidence review in arguing that we cannot consider the inadmissible evidence about the repair bills.  As our Supreme Court has made clear, " '[e]vidence erroneously admitted is properly considered in weighing the sufficiency of evidence to support a conviction, notwithstanding its erroneous admission.'  [Citation.]  The reason for this is that 'a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary "trial errors" as the "incorrect receipt or rejection of evidence." [Citation.]  While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [the defendant] has been convicted through a judicial *process* which is defective in some fundamental respect." ' " (*People v. Jasso* (2025) 17 Cal.5th 646, 684.)

Thus, contrary to Goodner's position, we *can* consider C.E.'s inadmissible testimony about the repair costs in resolving the instant claim.

9

Since C.E. testified that it cost about $2,100 to repair damage that occurred during the 2022 incident and about $8,200 to repair damage that occurred during the 2023 incident, there was substantial evidence that both instances of vandalism resulted in at least $400 of damage.

To the extent Goodner suggests there was insufficient evidence of the damage-value element even accepting C.E.'s hearsay testimony, we are unpersuaded. He cites C.E.'s agreement with his trial counsel on cross-examination that even though the damage to the Toyota in 2023 was to the "front left door" and interior, the repair shop also fixed "the front bumper, the front lamps and fender[,] and the rear door." This testimony may imply that some of the damage to the Toyota preexisted the 2023 incident, but C.E. also testified unambiguously on direct that there was no damage to the car before that incident and she did not ask for any repairs unrelated to that incident. The jury was not required to resolve any contradiction in favor of determining that the total repair cost included damage that did not result from the 2023 incident. As Goodner does not explain why the evidence of the 2022 repair cost was insufficient, we conclude that C.E.'s hearsay testimony furnished substantial evidence of the damage-value element of both felony vandalism counts.

### III.
### DISPOSITION

The two convictions for vandalism under Penal Code section 594, subdivision (b)(1), are reversed, the sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion. On remand, the People may elect to (1) accept a reduction of these two convictions to misdemeanors under Penal Code section 594, subdivision (b)(2), in which case the trial court is to resentence Goodner accordingly, or (2) retry him for felony

10

violations of Penal Code section 594, subdivision (b)(1).  In all other respects, the convictions are affirmed.

_____

Humes, P. J.


WE CONCUR:


_____

Banke, J.


_____

Smiley, J.


*People v. Goodner*  A171924